**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| KAREN L. BURKS,<br><br>Plaintiff,<br><br>vs.<br><br>BROWN UNIVERSITY,<br><br>Defendant. | C.A. No. 1:25–cv–00251–MSM–AEM |

**BROWN UNIVERSITY'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Brown University ("Brown") moves under Rule 12(b)(6) to dismiss *with prejudice* the Complaint filed by Plaintiff Karen L. Burks ("Plaintiff") for its failure to state a claim upon which relief may be granted.

## I. INTRODUCTION

Prolixity is no substitute for plausibility. Plaintiff's Complaint, despite its length, lacks the material factual allegations necessary to support plausible claims for discrimination—whether related to her alleged disability (ADHD) or her taking medical leave under federal (FMLA) and state (RIPFMLA) law.

Conclusory allegations that amount to mere formulaic recitations of the elements of a *prima facie* case are all that Plaintiff musters. But that is not enough to withstand scrutiny on a Rule 12(b)(6) motion.

Specifically, as it relates to her claims connected to her alleged disability, Plaintiff's Complaint fails to allege facts to support *prima facie* case for claims of discrimination, failure to accommodate, and retaliation:

(1) Plaintiff fails to allege plausible facts that her ADHD diagnosis constitutes a "disability" within the applicable statutory definitions. That her diagnosis allegedly caused her "to be a few minutes tardy for her scheduled shifts on occasion," or that it "caused her to lose track of time," do not equate to an impairment that substantially limited one or more "major life activities." This warrants dismissal of Counts 3, 4, 5, and 6.

(2) Counts 3, 4, 5, and 6 are also subject to dismissal because Plaintiff fails to allege facts to support how she could be "otherwise qualified" to perform her essential job functions as a Brown Patrol Officer—another required element of a *prima facie* case of disability discrimination. Indeed, Plaintiff does not and cannot explain whether there is any universe where she could ever be punctual, with or without an accommodation. Punctuality is, as a matter of law, an essential job function—and thus the law does not require Brown to accommodate Plaintiff by permitting her unlimited free passes for totally unpredictable and inconsistent tardy spells.

(3) Plaintiff's Complaint is also devoid of any allegation that she requested an accommodation from Brown related to an alleged disability. Thus, she does not and cannot allege that any such request was unreasonably denied. Instead, Plaintiff only alleges that Brown suggested and imposed reasonable accommodations regarding her tardiness and use of intermittent FMLA—accommodations to which Plaintiff never objected or to which she was incapable of adhering. By her own allegations, therefore, it was Plaintiff—not Brown—who failed to engage in the interactive process. As a result, Counts 3, 4, 5, and 6 are also subject to dismissal because a *prima facie* disability discrimination claim requires the existence of some specific allegations that Plaintiff

requested an accommodation that (a) was reasonable, and (b) that the request for accommodation was unreasonably denied.

(4) Plaintiff's Complaint does not allege what actions, if any, were "protected conduct" under any of the disability-related statutes that could support a claim for retaliation.

As it relates to her claims related to alleged interference and retaliation with protected medical leave, Plaintiff fails to allege that Brown ever unjustifiably denied her from taking requested retroactive leave. Instead, she merely makes the conclusory allegation that her eventual termination was effectuated "because of" her taking leave in the past. However, that she occasionally took medical leave to account for her unpredictable tardiness before (or around the same time as when) she was disciplined does not create a plausible causal connection between her termination and her leave.

Perhaps most importantly, however—and pertinent to all of her claims—is the fact that Plaintiff admits that she engaged in the conduct that caused Brown to terminate her employment. Indeed, by Plaintiff's own allegations, she was never disciplined for tardiness covered by protected medical leave—she was only disciplined for the numerous times that she would unpredictably arrive late to work for reasons divorced from her alleged disability and without giving her supervisor proper advanced notice. And because, as a matter of law, punctuality is an essential job function, Plaintiff fails to plausibly plead facts that could support claims for relief.

In addition to the foregoing reasons for dismissal, at least two of the six alleged acts of discriminatory conduct that Plaintiff challenges are barred by applicable statutes of limitations. Those allegations, therefore, cannot be the actionable basis for any of Plaintiff's claims. As such, the Court should dismiss or strike them from the Complaint altogether.

## II. FACTS AS ALLEGED IN THE COMPLAINT[1]

Plaintiff's Complaint attempts to plead six causes of action against Brown:

(1) violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. due to alleged interference, retaliation, and discrimination;

(2) violation of the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-48-1, *et seq*., due to alleged interference, retaliation, and discrimination;

(3) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12101, *et seq*., due to alleged discrimination, failure to accommodate, and retaliation/interference;

(4) violation of the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et seq*., due to alleged discrimination, failure to accommodate, and retaliation/interference;

(5) violation of the Civil Rights of People with Disabilities Act ("CRPD"), R.I. Gen. Laws § 42-87-1, *et seq*., due to alleged discrimination, failure to accommodate, and retaliation/interference; and,

(6) violation of the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1, *et seq*., due to alleged discrimination, failure to accommodate, and retaliation/interference.[2]

Each of the six causes of action, all of which are related in some way to Plaintiff's alleged disability, contain a single conclusory paragraph alleging that Brown, for example, "by its acts and/or omissions, including, but not limited to those described [in the Complaint],

---

[1] Solely for the sake of this motion to dismiss, and without admitting their veracity, Brown summarizes Plaintiff's allegations as set forth in her Complaint.

[2] *See* Complaint, ¶¶ 154–160.

engaged in unlawful discrimination" under the referenced statute.[3] Rather than contain a short plain statement about how Brown's alleged conduct violated the relevant laws, the Complaint incorporates by reference the prior 153 paragraphs as a purported factual basis for the otherwise conclusory allegations under the heading for each cause of action.[4]

The Complaint's 153 paragraphs of factual allegations can be categorized into several different sections, as follows:

(1) A "factual background" section, where Plaintiff identifies her employment with Brown as a Campus Police Officer;[5]

(2) A section titled "approved accommodation" where Plaintiff describes her alleged disability—a diagnosis of ADHD—and explains how she used FMLA leave to cover work tardiness when Plaintiff arrived late to work;[6]

(3) Six separate subsections describing six different alleged "discriminatory or retaliatory" acts by Brown;[7]

(4) A section titled "Interference and Retaliation in Violation of the FMLA and RIPFMLA", where Plaintiff alleges in conclusory fashion that Brown terminated her because she requested to use and/or did use FMLA leave;[8]

(5) A section titled "Disability Discrimination in Violation of the ADA, CRPD, FEPA, and RICRA", where Plaintiff recites a formulaic list of allegations that attempt to

---

[3] *See id.*, ¶¶ 157–160. To the extent that the Complaint purports to hold Brown liable for acts/omissions not alleged in the Complaint, that is obviously inappropriate, and the Court can ignore and/or strike the "including but not limited to" language.

[4] *See id.* at ¶ 154.

[5] *See id.* at ¶¶ 13–24.

[6] *See id.* at ¶¶ 25–39.

[7] *See id.* at ¶¶ 40–127.

[8] *See id.* at ¶¶ 128–130.

track the legal elements of a *prima facie* case for disability discrimination or a failure to accommodate; and,

(6) A section titled "General Employment Law Allegations" with one subheading titled, "Pretext and Discriminatory Animus," where Plaintiff alleges facts that purport to show that Brown's apparent reasons for disciplining and terminating Plaintiff were pretextual, and another subheading titled "Motivation and Harm" where Plaintiff alleges that Plaintiff's termination stemmed from ill will or malice that Brown harbored towards Plaintiff for allegedly exercising statutorily protected rights.

For the sake of consistency and clarity, Brown summarizes the factual allegations in the Complaint as they are broken up in the different sections of the Complaint.

**A. Section 1: Plaintiff's Employment at Brown.**

Plaintiff alleges that she worked at Brown as a Campus Police Officer in Brown's Department of Public Safety ("DPS") since about February 1990 until she was terminated on or about June 2, 2023.[9] She alleges that she regularly worked 40 hours per week, as well as overtime, and that she earned certain benefits in connection with her employment.[10]

Plaintiff alleges her job duties included but were not limited to "protecting [Brown's] community, enforcing [Brown's] rules and regulations, and ensuring the safety and security of all of [Brown's] properties as well as all its faculty, staff, student body, guests and visitors."[11]

[9] *See id*. at ¶¶ 13–16.

[10] *See id*. at ¶¶ 17–19.

[11] *See id*. at ¶ 20.

According to Plaintiff, and notwithstanding the discipline she herself documents in the Complaint, Plaintiff exceeded Brown's expectations and lacked a history of "work performance deficiencies."[12]

**B. Section 2: Plaintiff's Alleged Disability and Her Beginning to Take Intermittent FMLA Leave.**

Plaintiff alleges next that she was diagnosed with Attention-Deficit/Hyperactivity Disorder, or "ADHD," in 2010—a diagnosis that was reevaluated and eventually treated with prescription medication in 2016.[13]

Plaintiff's ADHD allegedly cause Plaintiff "to be a few minutes tardy for her scheduled shift on occasion" and "to lose track of time."[14] Plaintiff's ADHD also allegedly caused her to "believe that she could accomplish tasks much quicker than the amount of time actually required to perform the tasks" and as a result, Plaintiff found it "difficult" to "properly allocate and devote her time and attention to various obligations," including being the president of her union, the Brown University Security Patrolperson's Association ("BUSPA"), which itself is a member of the American Coalition of Public Safety.[15]

Plaintiff alleges that her tardiness was occasionally caused by her ADHD, and as a result, Plaintiff began using intermittent FMLA leave to retroactively cover certain instances of tardiness beginning in about 2019.[16] Plaintiff alleges that Brown permitted Plaintiff to call DPS

---

[12] *See id*. at ¶¶ 21–24.

[13] *See id*. ¶¶ 27-29.

[14] *See id*. at ¶¶ 31–33.

[15] *See id*.; *see also id*. at ¶ 38–39.

[16] *See id*. at ¶¶ 34–37.

on her drive in to work to notify it of her anticipated tardiness, and that Brown allegedly did not require that Plaintiff call a certain amount of time in advance.[17]

### C. Section 3: Plaintiff's Allegations of Discrimination.

#### 1. Plaintiff is Placed on a Performance Improvement Plan on or about January 31, 2022 Due to Her Tardiness.

Though she had allegedly been using intermittent FMLA leave starting in 2019, Plaintiff alleges that Brown began to discriminate against her when it placed her on a 60-day performance improvement plan ("PIP") in or about January 31, 2022, due to her tardiness.[18]

Plaintiff alleges that she always called DPS ahead of her shift's start time to notify it of her tardiness.[19]

Plaintiff does not allege, however, that the instances of tardiness that resulted in the PIP's implementation were covered by FMLA leave or that her alleged disability caused her to be late to work. She also fails to allege that the PIP adversely changed the terms or conditions of her employment (i.e., resulted in disciplinary action, suspension, reduction of pay, etc.).

According to Plaintiff's allegations, DPS's Director of Finance and Administration initiated the PIP's implementation, though she did not attend the meeting at which Plaintiff was notified of it.[20]

---

[17] *See id*.

[18] *See id*. at ¶¶ 40–41.

[19] *See id*. at ¶ 42.

[20] *See id*. at ¶¶ 43–45.

**2. Plaintiff is Suspended for Two Days for Persisting Tardiness.**

Plaintiff next alleges that Brown suspended her for 2 days without pay for 10 separate instances of tardiness.[21] The suspension was allegedly communicated via a meeting on May 2, 2022, and DPS also extended Plaintiff's PIP an additional 30 days.[22]

Plaintiff all but explicitly admitted to being tardy on the 10 separate occasions, and alleged that she had called DPS ahead of showing up late, that her tardiness was "de minimus," and that her tardiness did not interfere with her performance of public safety functions.[23]

Plaintiff again, however, did not allege that the 10 instances of tardiness were retroactively covered by FMLA leave or that they related in any way (or were otherwise caused by) her disability.[24]

Despite alleging that the suspension violated her union's collective bargaining agreement ("CBA"), Plaintiff does not allege that she grieved or arbitrated the purported contract violation through the CBA's processes and procedures.[25] Plaintiff ultimately served the two-day suspension on May 3 and 4, 2022.[26]

In no paragraph in this subsection does Plaintiff allege that she made a request for an accommodation, or that she was otherwise precluded from taking FMLA leave.

**3. Brown Confirms Plaintiff's Ability to Take FMLA Leave.**

*Two weeks after* Plaintiff's first suspension, on May 16, 2022, Plaintiff alleges that Brown's Leave and Accommodation Manager emailed her "confirming that she was permitted to

---

[21] *See id*. at ¶¶ 46–47.

[22] *See id*.

[23] *See id*. at ¶¶ 49–53.

[24] *See id*.

[25] *See id*.

[26] *See id*.

take intermittent FMLA leave" in a frequency and duration that Plaintiff's doctor had allegedly certified the same day as when Plaintiff received her two-day suspension.[27]

Plaintiff does not allege with what frequency or duration she was permitted to use FMLA leave *prior to* May 2, 2022, there is no allegation that there was a change to some prior understanding, and there is no allegation suggesting that Brown refused to permit Plaintiff to take FMLA leave for which she was approved.

Moreover, Plaintiff does not allege that she responded to this email with a request for a reasonable accommodation.

**4. Plaintiff is Suspended a Second Time for Persistent Tardiness.**

On or about November 21, 2022, Brown notified Plaintiff that it was *considering* suspending Plaintiff for 30 days because of 14 separate instances of tardiness.[28] During that meeting, Plaintiff "remind[ed]" DPS's Deputy Chief and the Director of Finance and Administration of her arrangement to retroactively apply FMLA leave to instances of tardiness, and agreed to email DPS in the future when she used FMLA time for tardiness.[29]

After the alleged meeting, and on the same day, the Director of Finance and Administration allegedly emailed Plaintiff and required her to "call the Sergeant as soon as possible" when Plaintiff knew she was going to be late and would be using her FMLA leave to cover a tardiness, but the email did not set a minimum amount of time of advanced notice she needed to give.[30]

---

[27] *See id*. at ¶¶ 54–56.

[28] *See id*. at ¶¶ 57–60.

[29] *See id*. at ¶¶ 61–65.

[30] *See id*. at ¶¶ 66–68.

In either the same or a separate email (the allegations do not make it clear), the Director of Finance and Administration allegedly emailed Plaintiff the 14 dates when she had been tardy[31]. By Plaintiff's own allegations, only 2 of those 14 days were days where Plaintiff properly notified DPA of her use of FMLA time to cover the instances of tardiness.[32] The other instances were completely unexcused, were instances when Plaintiff failed to notify DPS of her intent to use FMLA to cover them (recording use of FMLA time on her own personal calendar), or were completely unrelated to her alleged disability or FMLA leave (traffic backed up into Massachusetts).[33]

Thereafter, Plaintiff alleges she met again with the DPS Deputy Chief and the Director of Finance and Administration on December 3, 2022, and received a letter noticing her 30-day suspension.[34] Allegedly, however, after further consideration, DPS negotiated with Plaintiff and agreed to reduce the suspension to 7 days (with only 2 to be served) in exchange for Plaintiff's agreement not to grieve the suspension.[35] Plaintiff agreed, but ultimately failed to sign the suspension notice, allegedly because no one told her she needed to sign it and because Brown only removed the FMLA-covered instances of tardiness from the suspension notice.[36] As a result, Brown re-implemented a 30-day suspension.[37]

Plaintiff alleges that she filed a grievance under the CBA to contest the suspension, and that Brown reduced—and Grievant ultimately served—a reduced unpaid suspension of 20 days

---

[31] *See id*. at ¶ 69.

[32] *See id*. at ¶ 71.

[33] *See id*.

[34] *See id*. at ¶¶ 72–74.

[35] *See id*. at ¶¶ 75–76.

[36] *See id*. at ¶¶ 77–92.

[37] *See id*.

(during which time Plaintiff alleges she missed out on certain holiday pay days and paid winter recess time).[38]

Nowhere in the 39 paragraphs of this subsection does Plaintiff allege facts to suggest (a) that she made a request for a reasonable accommodation, (b) that Brown prevented Plaintiff from using FMLA leave, (c) that Brown disciplined Plaintiff for any other reason other than her unjustified tardiness, or (d) that Plaintiff was incapable, by reason of her alleged disability or otherwise, of giving DPS additional advanced notice of her anticipated tardiness.

**5. Plaintiff is Required to Give at Least 30 Minutes Notice of Her Anticipated Tardiness.**

Plaintiff next alleges that during a meeting on March 28, 2023, the Director of Finance and Administration and the Deputy Chief required that Plaintiff call-in to DPS's Sergeant at least 30 minutes prior to the start of her shift if she wanted to utilize FMLA leave.[39] This requirement was allegedly communicated to Plaintiff in an email of the same date.[40]

Plaintiff does not allege in this subsection that she requested a reasonable modification of this allegedly new requirement, nor does she allege that she made any other request for accommodation.

**6. Plaintiff is Terminated for Persistent Tardiness.**

Plaintiff alleges that during a meeting on May 31, 2023, DPS's Director of Finance and Administration and DPS's Vice President notified Plaintiff of Brown's intent to terminate

[38] *See id*. at ¶¶ 93–96.

[39] *See id*. at ¶¶ 97–104.

[40] *See id*.

Plaintiff's employment, and Plaintiff received a letter written by the Deputy Chief outlining the reasons for the recommendation of termination.[41]

Plaintiff *admits* that, as the letter described, she was tardy on three separate occasions after the suspension: on April 27, 2023, May 15, 2023, and May 23, 2023.[42] As Plaintiff herself alleges, none of the three instances of tardiness were caused by the impact of her alleged disability, nor did she have FMLA leave cover the instances of tardiness.[43] On April 27, Plaintiff was allegedly tardy because of an auto accident, and she called the Sergeant just 10 minutes before the start of her shift.[44] On May 15, Plaintiff was allegedgly late because she was visiting "the pharmacy" and "the warehouse" looking to refill her medication.[45] Plaintiff called the Sergeant just 16 minutes prior to the start of her shift, and subsequently requested (but did not receive) FMLA coverage for the tardiness incident.[46] On May 23, Plaintiff was allegedly late because there was glass on her driveway, and then she got "stuck in traffic."[47] She did not call the Sergeant until just 9 minutes prior to the start of her shift.[48]

During this meeting on May 31, i.e., the meeting to discuss her recommended termination, Plaintiff alleges that the Union Secretary stated that by implementing the call-in time procedure and procedure relating to Plaintiff's requests for FMLA time, DPS was setting Plaintiff up to fail.[49] Plaintiff alleges that the Union Secretary further stated that DPS "knew full

[41] *See id*. at ¶¶ 109–112.

[42] *See id*. at ¶¶ 113–118.

[43] *See id*. at ¶ 113.

[44] *See id*.

[45] *See id*. at ¶ 105.

[46] *See id*.

[47] *See id*. at ¶ 113.

[48] *See id*.

[49] *See id*. at ¶ 119.

well" that Plaintiff struggled with getting out of the house and even still, it required Plaintiff call-in to notify DPS of her tardiness.[50] At the conclusion of the meeting, Plaintiff was placed on administrative leave pending a final determination of the Deputy Chief's recommendation for termination.[51]

Ultimately, during a meeting on June 2, 2023, DPS's Vice President followed through with the Deputy Chief's recommendation, and Brown terminated Plaintiff's employment effective that day.[52]

Nowhere in these paragraphs—or at any time prior to termination—does Plaintiff allege that she ever requested a reasonable accommodation or requested to modify the requirements that Brown implemented related to Plaintiff's call-in procedure.

Additionally, Plaintiff does not allege how, with some alternative accommodation, she could have been capable of meeting Brown's perfectly reasonable expectation that she timely report to her scheduled shift and/or give Brown the requisite notice when Plaintiff would, in fact, be tardy.

Plaintiff does not allege that she grieved or arbitrated the termination decision under the CBA.

**D. Section 4: Conclusory Allegations Concerning Violations of FMLA and RIPFMLA.**

Here, Plaintiff infers—without stating the basis for the inference—that her request to use intermittent leave was what caused her termination, and alleges that Brown's "termination of Plaintiff's employment . . . gives rise to a *prima facie* case of unlawful interference and

[50] *See id*. at ¶ 120.

[51] *See id*. at ¶ 121.

[52] *See id*. at ¶ 122

discrimination" and a violation of the FMLA and the RIPFLMA.[53] Plaintiff alleges, alternatively, that her taking of intermittent FMLA/RIPFMLA leave is what caused her termination.[54]

**E. Section 5: Formulaic Recitation of the Elements of Disability Discrimination.**

In this section, Plaintiff alleges statements exactly tracking the elements of a *prima facie* case without tying those conclusory statements to previously alleged facts.

For example, Plaintiff alleges in conclusory fashion in paragraph 133 that her ADHD "substantially limited one or more major life activities" despite her prior allegations that the most her ADHD did was cause her to lose track of time on occasion.[55]

Ignoring the previously alleged facts concerning her inability to timely report to work for reasons unrelated to her ADHD, Plaintiff alleges she "was able to and in fact did" perform her duties as a Campus Police Officer such that she was "otherwise qualified."[56]

Notwithstanding the complete absence of any accompanying facts concerning a request for an accommodation made by Plaintiff, Plaintiff continues the formulaic recitation of elements by alleging in paragraph 142 that Brown "refused to provide Plaintiff with the medically documented reasonable accommodation she requested."[57]

Finally, in paragraphs 146 and 147, Plaintiff alleges that Brown "retaliated and discriminated against plaintiff for requesting a reasonable accommodation" and that Brown "interfered with Plaintiff's rights under the ADA and FEPA." But nowhere does Plaintiff articulate what she did to request a reasonable accommodation for her alleged disability.[58]

---

[53] *See id*. at ¶¶ 128–130.

[54] *See id*.

[55] *See id*. at ¶ 133

[56] *See id*. at ¶¶ 137–138.

[57] *See id*. at ¶ 142.

[58] *See id*. at ¶¶ 146–147.

### F. Section 6: Allegations Related to "General Employment Law Allegations."

The final section of Plaintiff's Complaint contains general allegations that match the description in its heading.

Here, Plaintiff alleges that Brown's motivation for terminating Plaintiff's employment was pretextual because, among other things, DPS did not punish other non-disabled Campus Police Officers despite their habitual tardiness, that Plaintiff's discipline for tardiness did not occur until after Brown was aware of her alleged disability and after "Plaintiff requested a reasonable accommodation," that Brown "unilaterally" altered Plaintiff's "accommodation" while "knowing well" that Plaintiff's alleged disability would prevent her from complying with altered requirements, and that Brown's discipline of Plaintiff for her tardiness was otherwise trivial or false.[59] Plaintiff also alleges that "temporal proximity" further aids in an inference of discriminatory intent.[60]

Plaintiff lastly alleges that Brown's so called "wrongful and/or unlawful acts and/or omissions, including but not limited to those described herein," were made with malice or ill will toward Plaintiff.[61] As a result of all of such alleged conduct, Plaintiff alleges she has and will continue to suffer various forms of "emotional and economic injury."[62]

## III. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must present "factual allegations that 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29

[59] *See id*. at ¶¶ 150–151.

[60] *See id*. at ¶ 151.

[61] *See id*. at ¶ 152.

[62] *See id*. at ¶ 153.

(1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)). That standard applies to state law claims that are before the court pursuant to its exercise of supplemental jurisdiction. *See Clark v. Mortg. Elec. Registration Sys.*, 7 F. Supp. 3d 169, 174 (D.R.I. 2014).

The Court's inquiry is a two-step process. *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 184 (D.R.I. 2016) (citations omitted). First, the Court must separate a complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). *See id.* Second, "the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted); *see also Laccinole v. Navient Sols., LLC*, 589 F. Supp. 3d 261, 267 (D.R.I. 2022) (citing *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

Although the court should accept as true "all well-pleaded factual averments," and indulge "all reasonable inferences in the plaintiff's favor," the standard "does not force [a court] to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citations omitted); *see also Rose v. Davis*, No. 23-13 WES, 2023 U.S. Dist. LEXIS 146073, at *3 (D.R.I. Aug. 21, 2023) ("Claims comprised of 'meager, vague, or conclusory' statements are insufficient . . . ." (citing *Ashcroft*, 556 U.S. 662, at 678; *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (internal citation omitted))).

In short, "[i]f the factual allegations in a complaint, stripped of conclusory legal allegations, raise no more than a sheer possibility that a defendant has acted unlawfully, the complaint should be dismissed." *Crawford v. Salve Regina Univ.*, Case No. 1:23-CV-00380-

MSM-PAS, 2024 U.S. Dist. LEXIS 107842, at 13 (D.R.I. Jun. 18, 2024) (McElroy, J.) (quoting *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022)).

## IV. LEGAL ARGUMENT

The below legal argument is organized first by the factual basis of the particular count in the Complaint.

Brown first addresses Plaintiff's four counts related to alleged discrimination stemming from her alleged ADHD diagnosis (Counts 3, 4, 5, and 6). Within that discussion, Brown organizes its arguments by the multiple theories of disability discrimination alleged by Plaintiff (i.e., discrimination, failure to accommodate, and retaliation). Within each such subheading is where Brown explains how Plaintiff's Complaint fails to plead facts sufficient to support respective claims for relief under each applicable statute.

Then, Brown discusses Plaintiff's counts related to alleged discrimination stemming from her taking medical leave under federal and state law (Counts 1 and 2).

Finally, Brown identifies the respective applicable statutes of limitations and explains how they prevent Plaintiff from relying on at least two of the six instances of conduct to which she points in support of her (otherwise deficient) claims.

### A. Plaintiff's Disability Related Claims Under the ADA, FEPA, CRPD, and RICRA are Subject to Dismissal For Her Failure to Sufficiently Plead Facts To Support Them.

As a threshold matter, state law disability discrimination claims are subject to the same analysis as federal law. *See Kriegel v. Rhode Island*, 266 F. Supp. 2d 288, 296 (D.R.I. 2003) (Rhode Island state law disability claims "are best understood by reference to the analysis utilized in the corresponding federal statute, the [ADA]."). As a result, when Brown cites to federal law interpreting the ADA, the force and effect of the analysis is the same under FEPA, RICRA, and CRPD.

Because the Complaint lacks any factual allegations (other than legal conclusions) pointing to direct evidence of disability discrimination, Plaintiff's disability-related claims are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mancini v. City of Providence*, 909 F.3d 32, 38 (1st Cir. 2018) (applying *McDonnell Douglas* framework to ADA claim). Therefore, Plaintiff must plead facts sufficient to allege the elements of a *prima facie* case of disability discrimination (regardless of the theory) to pass the *Iqbal-Twombly* plausibility test. *See Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) (explaining that pleading facts to support elements of a *prima faci*e case "are part of the background against which a plausibility determination should be made.").

**1. All of Plaintiff's Claims Related to Her Alleged Disability Must Fail Because She Does Not Plausibly Allege That Her ADHD Substantially Impaired Her Major Life Activities.**

A material, threshold component of Plaintiff's disability-related claims is that Plaintiff must plausibly allege that she is disabled. *See Medina-Rodríguez v. Canóvanas Plaza Rial*, Case No. 17-1943, 2021 U.S. Dist. LEXIS 191395, at *16 (D.P.R. Sep. 30, 2021) ("To raise a cognizable ADA claim, a plaintiff must be disabled."); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 86-87 (1st Cir. 2012) (first element of a *prima facie* case for disability discrimination is that plaintiff is disabled).

Plaintiff fails to do so because her factual allegations concerning her ADHD diagnosis do not raise a plausible inference that her condition constitutes a disability under applicable law.

A "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Wright v. CompUSA, Inc.*, 352 F.3d 472, 475-76 (1st Cir. 2003) (citing 42 U.S.C. § 12102(2)). Though "concentrating" and "working" are both

considered "major life activities" under applicable regulations, the impairment caused by an alleged disability must "substantially limit" the individual's ability to perform such activities. *See* 29 C.F.R. § 1630.2(i). And the regulations explicitly recognize that "not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(1)(ii).

Interpreting the applicable regulations, "[t]he First Circuit has held that a diagnosis of ADHD alone cannot by itself establish an ADA claim, absent a showing of a substantial limitation of a major life activity." *Pepper v. Brown Univ.*, Case No. 21-248, 2023 U.S. Dist. LEXIS 198182, at *10 (D.R.I. Nov. 2, 2023) (citing *Wright*, 352 F.3d at 477); *see also Hess v. Rochester Sch. Dist.*, 396 F. Supp. 2d 65, 74 (D.N.H. 2005) ("An ADD or ADHD diagnosis is not sufficient to establish a disability under the ADA. A plaintiff claiming a disability based on such diagnosis must also show a substantial limitation of a major life activity." (citing *Wright*, 352 F.3d at 476-66)); *Donkor v. Weill Cornell Med. Coll.*, Case No. 23-CV-369, 2025 U.S. Dist. LEXIS 35716, *8-11 (S.D.N.Y. Feb. 27, 2025) (noting that plaintiff's "'general' description of 'organizational and executive function' difficulties" failed to plausibly suggest that her ADHD, dyscalculia, and dyslexia imposed "more than 'mild limitations' on her major life activities," and therefore dismissal was warranted); *Golden v. City of Longview*, No. 6:20-cv-00620, 2022 U.S. Dist. LEXIS 97791, at *25-26 (E.D. Tex. June 1, 2022) (Plaintiff who claimed his ADHD affected his ability to concentrate and learn due to Plaintiff being easily distracted failed to establish a "disability" because he had not stated the severity of his ADHD or sufficient facts to show that his ADHD substantially limited one or more major life activities. (citing *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 605-06 (S.D. Tex. 2012))).

The only factual allegations to which Plaintiff can point—aside from legal conclusions—that could possibly illustrate a substantial impact to major life activities are those set forth in

paragraphs 31 through 33. There, Plaintiff alleges that her ADHD impacts her ability to keep track of time and "caused her to be a few minutes tardy for her scheduled shift on occasion." *See* Compl. at ¶ 31. However, these allegations are insufficient to pass the plausibility test—especially in light of the above case law—because courts have recognized that "[w]ork difficulties, including those related to executive functioning and organization, are widespread and not necessarily limited to individuals with ADHD, dyscalculia, and dyslexia." *Donkor,* 2025 U.S. Dist. LEXIS 35716, at *10 (collecting cases). In other words, not only is it insufficient for Plaintiff to merely identify ADHD and assume, *ipso facto*, that such diagnosis constitutes a disability under the law, but Plaintiff's allegations concerning the impact of her ADHD on her major life activities also fail to carry the day.

The plausibility of Plaintiff's conclusory allegations about her disability are further undermined by other allegations in the Complaint. Plaintiff's alleged condition did not impact her ability "to always call[ ] DPS ahead of her shift to let them know if she was running a few minutes late," *see* Compl. at ¶ 34, nor did it prevent her from successfully handling other responsibilities like being the union president. *See id*. at ¶ 38. The overwhelming weight of applicable case law paired with Plaintiff's own allegations make it implausible that Plaintiff's condition substantially limits her ability to perform major life activities.[63]

Considering the foregoing, and when disregarding Plaintiff's conclusory allegations, Plaintiff's Complaint fails to plead facts sufficient to support any claim for disability-related discrimination when the Complaint does not allege facts that raise a plausible inference that Plaintiff's ADHD affected her major life activities. All of Plaintiff's disability-related claims in

[63] Indeed, the more plausible conclusion drawn from the allegations in the Complaint is that Plaintiff now attempts to use her condition as a post-termination "get-out-of-jail-free card." Per Plaintiff's own allegations, however, the tardiness for which she was disciplined had no relationship to her ADHD, whatsoever, further undermining the conclusory allegation that the condition impacted her major life activities.

Counts 3, 4, 5, and 6—regardless of the theory—should therefore be dismissed for failure to state a claim.

### 2. Plaintiff's Claims for Straight Disability Discrimination Fail.

In addition to the deficiencies related to the Complaint's allegations of Plaintiff's disability, the Complaint also fails to plead facts sufficient to satisfy the other two prongs of a *prima facie* case for straight disability discrimination. In addition to pleading facts sufficient to allege that she has a disability, Plaintiff must also allege facts sufficient to plausibly suggest "that she is qualified to perform the essential functions of her job with or without a reasonable accommodation and that she was discharged or otherwise adversely affected in whole or in part because of her disability. *Jones*, 696 F.3d at 86-87.

#### a. Plaintiff Does Not Allege Facts to Support the Conclusory Allegation that She is "Otherwise Qualified" Because She Admitted That She Cannot Perform an Essential Function of Her Job (i.e., Arriving to Work on Time).

Nowhere in the Complaint does Plaintiff suggest with plausible facts that she could have timely reported to work with or without a certain accommodation. This glaring omission, alone, warrants dismissal because Brown could not have discriminated against Plaintiff if she was unable to perform an essential function of the job—here, reporting to work on time.

Courts routinely hold that punctuality is an essential function of similar jobs. In *Andujar v. IPC Int'l Corp.*, 583 F. Supp. 2d 213 (D. Mass. 2008), for example, the plaintiff was the "lead security officer" at a shopping mall. *Id*. at 218. The court noted that "[w]here a position requires that tasks be performed at a particular time, attendance and punctuality are essential functions of the job." *Id*. (citing *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)). Thus, the court concluded that punctuality was an essential function of the plaintiff's security officer position because it "require[d] him to be present at specific hours of the day." *Id*. at 217–18; *see*

*also Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 546 (8th Cir. 2021) (affirming lower court's finding that attendance and punctuality were essential functions of the plaintiff's job as an office assistant for a security and electric utilities company where her job description included duties that could only be performed in the office and company had warned her several times that unexcused absences were unacceptable); *Owens v. City of New York Dep't of Educ.*, No. 17-cv-519, 2021 U.S. Dist. LEXIS 163819, at *39 (S.D.N.Y. Aug. 30, 2021) (finding that there was "no question" that punctuality was an essential function of the plaintiff's job as a teacher where her job description listed punctuality as a requirement and the plaintiff had received "multiple, repeated warnings about her tardiness."); *Spears v. Creel*, 607 Fed. Appx. 943, 949 (11th Cir. 2015) (affirming lower court's finding that plaintiff's job as a sheriff required the ability to work a consistent schedule based on job description and consideration of evidence that late arrivals "caused other officers to be held over from previous shifts or called into work on their days off, and increased the amount of overtime others worked.").

Plaintiff's Complaint affirmatively alleges what comprised some of her duties as a Campus Police Officer. *See* Compl. at ¶ 20. Those duties required her to be physically present to perform, underscoring the essential nature of Plaintiff's attendance and punctuality. Yet, Plaintiff's other allegations illustrate how she was incapable of arriving to work on time, period, regardless of whether her tardiness had anything to do with her disability. And per her own allegations, Plaintiff's discipline and her ultimate termination concerned only non-ADHD-related instances of tardiness. Thus, even if there were a reasonable accommodation that could have remedied her ADHD-related tardiness (which there was not), she still cannot establish that she was "qualified" because she was not able to timely report to work on a consistent or reliable basis. *See Griego v. Lennox Indus., Inc.*, No. 4:20-cv-01309, 2023 U.S. Dist. LEXIS 53077, at

*28–*29 (E.D. Ark. Mar. 28, 2023) (employee was not qualified where he was consistently absent or late for reasons unrelated to his medical conditions and his requested accommodation would not have changed that fact).[64]

The bottom line is that Plaintiff's Complaint lacks anything other than a legal conclusion to support the element that she was "otherwise qualified" to perform the essential functions of a Campus Police Officer. Without facts to plausibly support her satisfaction of that necessary element of a prima facie case of disability discrimination, Plaintiff's Complaint fails to withstand judicial scrutiny on a Rule 12(b)(6) motion. Plaintiff's claims related to her alleged disability should therefore be dismissed.

**b. There Are No Factual Allegations Establishing a Causal Connection Between Plaintiff's Discipline and Her Alleged Disability.**

As described in further detail above, Plaintiff's Complaint does not establish that her suspensions and termination were for any reason other than her persistent failure to arrive to work on time. *See Wagner v. Baystate Health, Inc.*, No. 12-cv-30146, 2013 U.S. Dist. LEXIS 154916, at *16–*17 (D. Mass. Oct. 29, 2013) ("Although the adverse action did occur after Plaintiff's FMLA leave, the surge of negative reports about Plaintiff and her failure to respond to the warning and performance improvement plan offer an explanation for why the termination occurred when [it] did. . . . Without any basis beyond timing, a reasonably jury simply could not find that Defendant's explanation constitutes a pretext for retaliation based on her invocation of

[64] Though Plaintiff does not allege that she ever requested a reasonable accommodation, as explained further *infra*, implicit in her Complaint is a suggestion that Brown, with awareness of her ADHD, should have unilaterally waived its punctuality requirements for Plaintiff so to allow her to show up to work whenever she wanted. But Courts in the First Circuit have made clear that an employer is not required to permit an employee to arrive to work on an unpredictable basis. *See, e.g.*, *Brown v. E. Me. Med. Ctr.*, 514 F. Supp. 2d 104, 110 (D. Me. 2007) ("the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability because no business is obligated to tolerate erratic, unreliable attendance." (quoting *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001))). Thus, Plaintiff's Complaint fails to plausibly allege that, even with an accommodation, she would have been "qualified" for the job as a Campus Police Officer.

her FMLA rights.”). As a result, her Complaint fails to plead facts (aside from legal conclusions) that would create a plausible inference that there is any causal nexus between her termination and her alleged disability.

To be sure, none of the six alleged discriminatory actions related to tardiness caused by limitations Plaintiff alleged flowed from her ADHD. When Brown placed Plaintiff on a PIP, Plaintiff did not allege that the tardiness that caused the placement had anything to do with her alleged disability. The same is true of all of her subsequent discipline, up to and including termination. Indeed, when she was suspended for the second time, Plaintiff’s allegations make clear that 12 of the 14 instances of tardiness were unrelated Plaintiff’s alleged disability. And when she was ultimately terminated, none of the 3 tardiness instances were reasonably linked to her alleged disability—and 2 of the 3 such instances had no nexus whatsoever.

In sum, Plaintiff’s Complaint lacks sufficient factual allegations to plausibly allege that her discipline and termination were causally linked to her alleged disability because her discipline and termination related to tardiness resulting from circumstances unrelated to her alleged disability.

#### 3. Plaintiff’s Claims for Failure to Accommodate Fail Because She Does Not Allege That She Ever Requested an Accommodation for Her Alleged Disability.

Plaintiff’s second theory of alleged disability-related discrimination is that Brown failed to reasonably accommodate Plaintiff’s disability. To succeed on a failure to accommodate claim, a plaintiff must show that: (1) she is a disabled person within the meaning of the applicable statute; (2) she is nonetheless qualified to perform the essential functions of the job (with or without reasonable accommodation); and (3) the employer knew of the disability but declined to reasonably accommodate it *upon request*. *Morin v. Hannaford Bros. Co., LLC*, Case No. 1:17-

CV-50-GZS, 2018 U.S. Dist. LEXIS 95733, at *24 (D. Me. Jun. 7, 2018) (emphasis added) (quoting *Sepúlveda-Vargas v. Caribbean Restaurants, LLC*, 888 F.3d 549, 553 (1st Cir. 2018)). Aside from not plausibly alleging that she was disabled or that she was otherwise qualified, Plaintiff also does not ever allege (but for a conclusory allegation) that she requested an accommodation from Brown.

That Brown may have known about her ADHD, may have tolerated her tardiness prior to implementing progressive discipline, or that Plaintiff utilized intermittent FMLA leave for certain late arrivals make no difference. *See Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) (the fact that the employer previously allowed an employee's requested accommodation "does not obligate them to continue providing such an accommodation."); *Hartwell v. Spencer*, 792 Fed. Appx. 687, 692 (11th Cir. 2019) (unpub.) ("just because an employer has, in the past, done more than required to accommodate an employee who cannot fulfill all the requirements of his job does not mean that the employer must continue to do so." (citing *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017))); *Evans*, 996 F.3d at 546-47 ("Intermittent FMLA leave does not excuse an employee from the essential functions of the job, such as the need for regular and reliable attendance." (quoting *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 675 n.4 (8th Cir. 2001))).[65]

[65] Plus, the fact that Plaintiff used intermittent FMLA leave to cover certain instances of tardiness cements her *lack* of qualification for the job. An employee who is deemed eligible for FMLA leave due to their own serious health condition is, by definition, "unable to perform the functions of the employee's job." 29 C.F.R. § 825.112(a)(4). Further, "[a]n employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is ***unable to perform any one of the essential functions of the employee's position within the meaning of the [ADA]***. An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." *Id.* at § 825.123(a) (emphasis added). Put simply, an employee takes FMLA leave *because* they are unable to perform their essential job functions. A reasonable accommodation under the ADA, by contrast, is "one that *enables* a disabled employee to perform the essential functions of a job." *Francis v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 771 (E.D.N.Y. 2016). Plaintiff got FMLA leave because she could not perform her essential job functions.

In the first instance, without alleging that she made a request for an accommodation *for a disability*, Plaintiff's logic leap that Brown's alleged knowledge of Plaintiff's ADHD amounts to knowledge of a disability is implausible. It is equally improper for Plaintiff to conflate her taking FMLA leave with a request for an accommodation for a disability—taking FMLA leave is not a "accommodation" under the ADA as a matter of law. *See Morin*, 2018 U.S. Dist. LEXIS 95733, at *32–*33 ("[A] request for FMLA leave is not a request for a reasonable accommodation under the ADA. The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief. FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision . . . .") (quoting *Acker v. Gen. Motors*, L.L.C., 853 F.3d 784, 791-92 (5th Cir. 2017)). In other words, Plaintiff's request for and use of intermittent FMLA leave does not constitute a request for an accommodation for a disability.

For the same reason, Plaintiff's allegations that Brown failed to engage in the interactive process do not create a plausible inference the Brown should have affirmatively commenced such a process—especially in the absence of a concrete request from Plaintiff. More telling, though, is that fact that the only factual allegations in the Complaint on this score are in the nature of legal conclusions rather than statements of alleged fact. Without any such allegations, Plaintiff's Complaint lacks the factual allegations necessary to plausibly allege that Brown failed to accommodate Plaintiff upon her request. Her failure to accommodate claims under Counts 3, 4, 5, and 6 therefore should be dismissed.

**4. Plaintiff's Claims for Retaliation Fail Because Plaintiff Did Not Engage in Conduct Protected by Applicable Statutes.**

Based on the same reasoning, above, Plaintiff cannot plausibly support claims of retaliation because she did not engage in conduct protected by the ADA, FEPA, RICRA, or CRPD. To make out a *prima facie* case of retaliation, a Plaintiff must show that: (1) she engaged

in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." *Lopez-Lopez v. Robinson Sch.*, 958 F.3d 96, 108 (1st Cir. 2020). Protected conduct under the applicable statutes, however, relates to conduct that is protected by those statutes—not others. Indeed, the ADA, for example, forbids retaliation "against any individual because such individual has *opposed* any act or practice made unlawful . . . or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under the ADA*." *Galvin-Assanti v. Atl. Props. Mgmt. Corp.*, 483 F. Supp. 3d 125, 141 (D.R.I. 2020) (emphasis added). Thus, to the extent that the Complaint's allegations highlight how the only protected conduct in which Plaintiff engaged related to the FMLA (there is no allegation that Plaintiff requested an accommodation for her disability), there can be no retaliation claim under any other statutory scheme. Plaintiff's retaliation claim also fails to allege facts to satisfy the causation element. *See Marenco v. Broad Inst., Inc.*, 2022 U.S. Dist. LEXIS 111079, at *24 (D. Mass. Feb. 18, 2021) ("Because Daniels never did request an accommodation, the retaliation claim falls under its own weight. An employer can hardly retaliate for something that never occurred. Because Daniels did not engage in protected conduct, she cannot establish a prima facie case of retaliation.").

In sum, without any factual allegations that Plaintiff requested an accommodation for her alleged disability, Plaintiff's retaliation claims under the ADA, FEPA, RICRA, and CRPD are not actionable if they relate only to conduct protected under FMLA. The Plaintiff's retaliation claims in Counts 3, 4, 5, and 6 should therefore be dismissed for failure to state a claim.

### B. Plaintiff's FMLA and RIPFMLA Claims Fail Because She Does Not Allege that Brown Ever Denied Her Benefits, Nor Did She Plausibly Allege a Causal Connection Between Her Discipline and Use of Benefits.

To show interference with FMLA and RIPFMLA-protected rights, Plaintiff must plead facts that plausibly show that (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) she was denied FMLA benefits by her employer. *Eissa v. Ledvance LLC*, 626 F. Supp. 3d 209, 217 (D. Mass. 2022) (quoting *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 728 n.8 (1st Cir. 2014)).[66]

Plaintiff fails to plead facts that would suggest Brown ever denied her FMLA benefits—she thus fails to plead facts sufficient to withstand judicial scrutiny as to prong 5 of a *prima facie* case. Indeed, the Complaint lacks any factual allegation that Plaintiff applied-for but Brown wrongfully prevented from using intermittent FMLA leave to cover her tardiness. Instead, the gravamen of Plaintiff's Complaint is that she felt as though she had adequate justification for her tardiness that occurred from circumstances *unrelated* to her ADHD and thus were *not covered* by FMLA leave, as explained in further detail above. *See* Compl. at ¶¶ 43–127. In the absence of requisite, nonconclusory allegations, Plaintiff does not plausibly plead sufficient facts to support a claim for FMLA/RIPFMLA interference and Counts 1 and 2 should be dismissed, accordingly.

To prove FMLA/RIPFMLA retaliation, on the other hand, Plaintiff can make a prima facie showing of illegal retaliation if she demonstrates that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between the employee's protected activity and the employer's adverse

[66] "The elements of the RIPFMLA are essentially the same elements as the corresponding federal laws and the disposition of the federal claims likewise disposes of the parallel state law claims." *See Galvin-Assanti v. Atl. Props*, 483 F. Supp. 3d at 138, n.7.

employer action. *Chain v. Station Operators, Inc.*, 832 F. Supp. 2d 131, 135 (D.R.I. 2011). For the reasons explained in further detail, *supra*, Plaintiff's Complaint does not plead facts to create a plausible inference that a causal connection existed between her suspensions and termination and her having taken FMLA/RIPFMLA leave. The tardiness for which she was disciplined, as alleged in the Complaint itself, was not covered by intermittent FMLA/RIPFMLA. Moreover, as Plaintiff alleges, she had been using such protected leave to cover instances of tardiness for *multiple years* prior to her first suspension in 2022. Thus, the timing alone makes implausible the conclusory statement that there exists a causal relationship between Plaintiff's discipline and her protected medical leave. The retaliation theory of relief in Counts 1 and 2 should therefore be dismissed.

**C. Plaintiff's Complaint Contains Facts That Make It Implausible that Brown's Termination of Her Employment was Pretextual.**

Even though questions involving pretext are typically reserved for the third step of the *McDonnell Douglas* burden shifting framework and thus not typically addressed at the pleadings-stage, *see Garmon v. Amtrak*, 844 F.3d 307, 313 (1st Cir. 2016) (explaining the burden-shifting framework), Brown moves to dismiss Plaintiff's claims to the extent they rely on a theory involving pretext because there are no factual allegations in the Complaint other than statements of legal conclusion that could raise a plausible inference that Brown's termination of Plaintiff had anything to do with protected conduct.

Plaintiff alleges in conclusory fashion that the timing of Brown's decisions to discipline and terminate her indicates pretext because they occurred after Plaintiff disclosed her ADHD diagnosis and sought to take intermittent FMLA leave. But these events occurred *years* apart (her first request for FMLA leave occurred in 2019; her two-day suspension occurred in May 2022; her thirty-day suspension occurred in December 2022; and her termination occurred in May

2023). *See Cherkaoui v. City of Quincy,* 877 F.3d 14, 27–28 (1st Cir. 2017) (adverse action that occurred years after a plaintiff engaged in protected activity was insufficient to establish pretext).

Despite her allegation that Brown had not disciplined her (or other employees) for tardiness prior to her disclosing her ADHD diagnosis and seeking FMLA leave, the fact of the matter is that the complained-of-conduct in the Complaint post-dates that disclosure by years. *See Wagner*, 2013 U.S. Dist. LEXIS 154916, at *16 ("Although the adverse action did occur after Plaintiff's FMLA leave, the surge of negative reports about Plaintiff and her failure to respond to the warning and performance improvement plan offer an explanation for why the termination occurred when they did. The timing *alone*, especially given this explanation, does not suggest retaliation."); *Albright v. Trs. Of the Univ. of Pa.*, No. 19-00149, 2019 U.S. Dist. LEXIS 180654, at *21 (E.D. Pa. Oct. 18, 2019) ("Albright first points to four years of positive performance evaluations in attempt to inject inconsistencies into the record. However, the record evidence is consistent and uncontradicted: Albright arrived to work late without informing his supervisor sixty times in a two-year period, and this chronic tardiness was the documented reason for every written warning and ultimately, his termination."). The Court should therefore dismiss all Counts of the Complaint that rely on a theory of pretext because the Complaint's very allegations make it implausible—thus insufficiently pled as a matter of law—that Brown could have terminated Plaintiff for pretextual reasons.

**D. Applicable Statutes of Limitations Prevent Reliance on At Least Two Discrete Alleged Discriminatory Acts.**

Finally, there are several discrete instances of conduct that are rendered inactionable by the applicable statutes of limitations, and thus they are subject to dismissal.

The FMLA imposes a 2-year limitations period that begins on the last event constituting the alleged violation for which the action is brought. *See* 29 U.S.C. § 2617(c)(1). It provides for a

longer period if a defendant acted willfully, requiring a plaintiff to show that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Even assuming the longer limitations period, Plaintiff should be prevented from supporting any claim under FMLA or RIPFMLA related to (1) Brown's imposition of the PIP on January 31, 2022, (2) Brown's first suspension of Plaintiff on May 2, 2022, and (3) the alleged "change" to the alleged "accommodation" on or about May 16, 2022 because all three events occurred more than three years before Plaintiff filed her Complaint. However, because the Complaint lacks sufficient factual allegations to support a plausible inference that Brown took unlawful action with malice or intentionality, the shorter 2-year limitations period should apply to also preclude Plaintiff from establishing a FMLA claim based on (1) her second suspension on December 3, 2022, and (2) the alleged "change" to the alleged "accommodation" on March 28, 2023. Therefore, even if Plaintiff's FMLA and RIPFMLA claims were to survive the foregoing judicial scrutiny, Plaintiff's termination is the only action that could serve as the basis of such claims upon an application of the applicable statute of limitations.

## V. CONCLUSION

In sum, Plaintiff's Complaint's allegations are insufficient to support a claim for relief against Brown for discrimination—whether related to an alleged disability or an alleged violation of rights related to protected medical leave—because when stripped of its legal conclusions, the Complaint's allegations render implausible Plaintiff's theories of relief. As alleged, Brown disciplined Plaintiff and terminated her employment because she failed to perform essential functions of her job, and the conduct for which she was disciplined had no nexus to (a) any

alleged disability, or (b) her rights under FMLA or RIPFMLA. Plaintiff does not (and cannot) allege facts that would ever raise a plausible inference of discrimination, failure to accommodate, retaliation, or interference sufficient to survive a Rule 12(b)(6) Motion, and so the Court should dismiss the entire Complaint *with prejudice*.

Respectfully submitted,

BROWN UNIVERSITY,

By their attorneys,

/s/ *Matthew H. Parker*
/s/ *Kevin W. Stone*

Matthew H. Parker (#8111)
Caroline R. Thibeault (#9697)
Kevin W. Stone, Jr. (#10843)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel: (401) 270-4500
Fax: (401) 270-3760
mparker@whelancorrente.com
cthibeault@whelancorrente.com
kstone@whelancorrente.com

Dated: September 22, 2025