**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KAREN L. BURKS,**<br>**Plaintiff** | : | |
| | : | |
| **V.** | : | **C.A. NO.: 1:25-cv-00251-MSM-AEM** |
| | : | |
| **BROWN UNIVERSITY,**<br>**alias,**<br>**Defendant** | : | |

**PLAINTIFF'S RULE 16 STATEMENT**

## I. Introduction

This is an action brought by Plaintiff, Karen L. Burks ("Plaintiff"), against her former employer, Defendant Brown University ("Defendant"), seeking relief for interference, retaliation, and discrimination in violation of the Family and Medical Leave Act ("FMLA") and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), as well as for disability discrimination, failure to accommodate, retaliation, and interference with Plaintiff's exercise of rights under the Americans with Disabilities Act of 1990 ("ADA") and corresponding Rhode Island statutes.

## II. Summary of Material Facts

On or about May 22, 1989, Defendant hired Plaintiff as a security officer. Plaintiff subsequently became a Campus Police Officer in February 1990 and proceeded to perform above and beyond the call of duty for over thirty-three years until her unlawful termination on June 2, 2023.

In or about 2010, Plaintiff was diagnosed with Attention-Deficit/Hyperactivity Disorder, more commonly known as ADHD. Plaintiff began taking medication to treat her ADHD beginning in 2016. As a result of her ADHD, Plaintiff can lose track of time which sometimes caused her to be late for work, though seldom by more than a few minutes. In 2020, Plaintiff's medical provider

submitted a medical certification for intermittent FMLA leave for her ADHD, specifically for the brief tardiness that it sometimes called. The certification requested that Plaintiff be able to use intermittent leave three to four times a month for tardiness. At that time, Defendant approved Plaintiff's use of intermittent leave for occasional tardiness, conditioned on her calling into work to let Defendant know that she would be late. Initially, Defendant did not require Plaintiff to call in any specific amount of time prior to her shift, and she was allowed to call in during her drive into work. This did not result in any significant difficulty for Plaintiff or Defendant.

Matters changed in January 2022, when Plaintiff was late to work six times during the month, four of which were covered by her approved intermittent FMLA leave. None of the instances exceeded twelve minutes, and most were under seven minutes.[1] Nonetheless, on January 31, 2022, Defendant placed Plaintiff on a sixty-day Performance Improvement Plan ("PIP") for tardiness, despite having always complied with the agreed-to terms of her intermittent FMLA leave. The PIP made no reference to Plaintiff's approved intermittent FMLA leave and threatened discipline for failure to meet attendance expectations, despite Plaintiff's compliance with the agreed-upon FMLA call-in procedures. This was a significant deviation from Defendant's typical disciplinary practices.

During the PIP period, Plaintiff sought additional support, including requesting a reasonable accommodation and providing additional medical documentation. Further, Plaintiff sought clarification on how to utilize her intermittent FMLA leave, though she had always done so in accordance with the agreed-to practices.

Plaintiff's PIP expired on March 31, 2022. During the PIP's duration, she had been late to work three times, twice in February and once in March. Plaintiff was late an additional two times

[1] Of note, Defendant had a policy of not imposing discipline for lateness of less than seven minutes. It is presently unclear whether this policy was in effect at the time of the events of the Complaint.

in April 2022. These instances were clearly within Plaintiff's intermittent FMLA leave, and none were for more than ten minutes, with some being for as little as a single minute.

Nevertheless, on May 2, 2022, Defendant suspended Plaintiff for two working days and extended the PIP by thirty days, inaccurately asserting that she had been late ten times since January 31, 2022. Moreover, Plaintiff had called into work to let Defendant know she would be late on each occasion she was late, as well as when she thought she may be late and, in fact, arrived on time. Additionally, shortly before her suspension, an email was sent to Plaintiff's supervisors "clarifying" that she was permitted to use her intermittent leave up to twice a month, for up to an hour each time. This was inconsistent with the leave Plaintiff had been granted, which allowed her to use intermittent leave up to four times a month.

Plaintiff had a doctor's appointment on May 2, 2022, and had her provider recertify her need for intermittent FMLA leave. Plaintiff's provider requested FMLA leave be granted up to five times per week for up to twenty minutes per occurrence. Defendant approved the leave as requested on May 16, 2022. Again, no minimum amount of advance notice was specified, nor was Plaintiff required to keep records of her intermittent use of FMLA leave. Plaintiff's extended PIP ultimately expired on June 17, 2022.

Plaintiff grieved her suspension, which Defendant denied on July 18, 2022, expressly stating that Plaintiff could be disciplined for tardiness notwithstanding her approved use of intermittent FMLA leave.[2]

On or about November 21, 2022, Defendant's Deputy Chief of Police John Vinson informed Plaintiff that he was considering suspending her for thirty days, ostensibly for fourteen

[2] Defendant explicitly stated that, "…throughout most of the PIP, [Plaintiff] had in fact a documented intermittent FMLA in place… [I]t must be clear that [Plaintiff's] decision to pursue or access these resources should in no way have been interpreted by [Plaintiff] as providing her with some type of exculpatory basis for her need to improve her time and attendance issues…"

instances of alleged lateness. Plaintiff pointed out that she had been granted intermittent FMLA leave provided that she would call ahead to let Defendant know that she was going to be late. Plaintiff later learned that six of the alleged instances were covered by intermittent FMLA leave, two by sick time, one resulted from an automobile accident, and one was charged on a day she was not working, leaving only four unexcused tardies, which she subsequently confirmed with Defendant. Nonetheless, Defendant proceeded with discipline far exceeding its typical practices.

On December 3, 2022, Defendant issued a letter imposing a thirty-day suspension for all fourteen tardies, offering to reduce it to seven days with two to serve if Plaintiff agreed not to grieve. Plaintiff accepted but continued attempting to correct Defendant's inaccurate attendance records. On December 10, 2022, Defendant revoked the reduced suspension and imposed the full thirty-day penalty. On December 19, 2022, Plaintiff grieved the suspension, which was denied on January 5, 2023, though the suspension was reduced to twenty working days.

On March 28, 2023, Defendant arbitrarily and unilaterally changed the conditions under which Plaintiff was permitted to use her intermittent FMLA leave. Specifically, Defendant suddenly required Plaintiff to call thirty minutes ahead of time if she was going to be late, and to make the call prior to leaving her home. This was problematic, as Plaintiff's usual commute was less than thirty minutes, effectively requiring her to know prior to leaving her house that she would be leaving late. Because of the nature of Plaintiff's ADHD, which had been disclosed multiple times to Defendant, this was not always possible, especially if she was being disciplined for being as little as one minute late.

On or about May 15, 2023, Plaintiff realized that she was going to be running late due to her ADHD and requested to use FMLA leave. Plaintiff made her call sixteen minutes prior to her scheduled shift. Plaintiff was ultimately two minutes and forty-five seconds late.

On May 31, 2023, Deputy Chief Vinson and Suzanne Flynn, Defendant's Director of Finance and Administration, met with Plaintiff and a Union Representative and informed her of Defendant's intent to terminate her for three instances of lateness, including the May 15 instance described above. The other two instances were the result of an automobile accident on 195 West, which Plaintiff reported to defendant nine minutes prior to her shift and resulted in her being six minutes and twenty five seconds late, and of Plaintiff finding broken glass in her driveway shortly before leaving for work, which she reported to Defendant twenty nine minutes prior to her shift and resulted in her being three minutes and thirty three seconds late. Deputy Chief Vinson and Ms. Flynn acknowledged that Plaintiff had requested use of her intermittent FMLA leave but falsely stated that she "did not follow the process required to use FMLA." Plaintiff questioned why none of these instances, some of which had occurred over a month prior, had ever been raised as an issue prior to the May 31 meeting and, through her Union Representative, noted that the arbitrary and unilateral change in the call-in procedure Plaintiff was required to use had set her up to fail. Nonetheless, Plaintiff was immediately placed on leave and ultimately terminated on June 2, 2023.

## III. <u>Legal Issues</u>

The legal issues in this matter include:

1. Whether Defendant interfered with Plaintiff's use of intermittent leave to which she was entitled under the FMLA and the RIPFMLA;
2. Whether Defendant retaliated against Plaintiff in response to her requests for and/or use of intermittent leave to which she was entitled under the FMLA and the RIPFMLA;
3. Whether Defendant discriminated against Plaintiff in response to her requests for and/or use of intermittent leave to which she was entitled under the FMLA and the RIPFMLA;

4. Whether Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA, FEPA, CRPD, and RICRA, including without limitation by refusing to grant her a needed accommodation and/or by interfering with her ability to utilize her rights guaranteed by those statutes; and,

5. Whether Defendant retaliated against Plaintiff in response to her actual and/or attempted utilization of her rights under the ADA, FEPA, CRPD, and RICRA, including without limitation by refusing to grant her a needed accommodation and/or by interfering with her ability to utilize her rights guaranteed by those statutes.

Plaintiff,
By her attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: December 12, 2025**

/s/ **Danilo A. Borgas**

**Danilo A. Borgas, Esq. (#9403)**
**Chloe A. Davis, Esq. (#9334)**
**Richard A. Sinapi, Esq. (#2977)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690
FAX: (401) 739-9040
Email: dab@sinapilaw.com
cad@sinapilaw.com
ras@sinapilaw.com